UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 15-cv-14060 |
| | ) | Hon. Sean F. Cox |
| | ) | Magistrate Judge Dawkins Davis |
| PARKSIDE EAST, INC.; | ) | |
| HOLT MANOR, INC.; | ) | |
| KELLY MANOR, INC.; and | ) | |
| SUDI HOPPER, | ) | |
| Defendants. | ) | |

**CONSENT DECREE**

**I.  INTRODUCTION**

1.     The United States initiated this action on November 19, 2015 under 42 U.S.C. §3614(a).  Defendants are Parkside East, Inc., Holt Manor, Inc., Kelly Manor, Inc., and Sudi Hopper (collectively, Defendants).  Defendants are or were owners, operators, and/or rental agents of Parkside East Apartments, located in East Lansing, Michigan, Holt Manor Apartments, located in Holt, and Kelly Manor Apartments, located in Owosso.

2.     The United States' complaint alleges that Defendants violated the Fair Housing Act ("FHA"), as amended, 42 U.S.C. §§ 3601 *et seq.*, by discriminating on the basis of familial status in the rental of dwellings, discouraging or restricting

individuals from renting certain dwellings based on familial status, and by making statements with respect to the rental of dwellings that indicate a preference, a limitation, or discrimination based on familial status.

3.     Defendant Sudi Hopper was the rental agent and/or owner of Parkside Apartments, Holt Manor Apartments and Kelly Manor Apartments at the time of the events alleged in the complaint.

4.     Parkside East Apartments is owned and/or managed by Parkside East, Inc.

5.     Holt Manor Apartments is owned and/or managed by Holt Manor, Inc.

6.     Kelly Manor Apartments is owned and/or managed by Kelly Manor, Inc.

7.     The apartments at Parkside East, Holt Manor and Kelly Manor are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

8.     The United States alleges that Defendants have engaged in housing practices that discriminate on the basis of familial status in violation of the FHA by:

      a.     Denying, or refusing to negotiate for the rental of, or otherwise making unavailable a dwelling because of familial status;

      b.     Discouraging and restricting families with children from renting certain dwellings based on familial status; and

      c.   Making or causing to be made statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status, or an intention to make such preference, limitation or discrimination.

9.    The United States alleges that the conduct of Defendants described above constitutes:

      a.  Refusing to negotiate for the rental of, or otherwise making unavailable or denying dwellings to persons because of familial status, in violation of 42 U.S.C. § 3604(a); and

      b.  Discriminating against persons in the terms, conditions, or privileges of rental of a dwelling because of familial status, in violation of 42 U.S.C. § 3604(b); and

      c.  Making statements with respect to the rental of a dwelling that indicate a preference, limitation, or discrimination based on familial status, in violation of 42 U.S.C. § 3604(c).

10.    The parties have chosen to resolve this matter through a negotiated settlement.  By their signatures below, the parties hereby consent to the entry of this Consent Decree and the attached Judgment.

3

2:15-cv-14060-SFC-SDD   Doc # 19-1   Filed 08/30/16   Pg 4 of 27   Pg ID 76

Therefore, it is **ADJUDGED, ORDERED and DECREED** as follows:

## II.  GENERAL INJUNCTION

11.     Defendants, their agents, employees, successors, and all persons in active concert or participation with them are hereby enjoined, with respect to the rental of dwellings,[1] including the rental of mobile homes and mobile home lots, from:

>       a.  making unavailable or denying a dwelling to any person because of familial status;

>       b.  discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status; and

>       c.  making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination.

## III. SPECIFIC INJUNCTIVE RELIEF

12.     Upon entry of this Consent Decree, Defendants shall implement the Nondiscrimination Policy appearing at **Appendix A** at any properties owned or

---

[1] The term "dwellings" has the meaning set out in the Fair Housing Act, 42 U.S.C. § 3602(b).

managed by Defendants for the duration of the Consent Decree, including Parkside East Apartments, Holt Manor Apartments, Kelly Manor Apartments, C & H Apartments, Camelot Apartments, Pine Cove Apartments and Park Place Apartments.

13.     Defendants shall, within ten (10) days of the entry of the Consent Decree, take all necessary actions to rescind any policies, leases, rental documents, newsletters, and any other statements approving of, endorsing, adopting, or otherwise citing the validity of policies discriminating on the basis of familial status.

14.     If any Defendant, or any of their officers, directors, agents, employees, or any person in active concert or participation with them, elects to adopt new policies or rules with respect to occupancy standards and/or children, Defendants must submit these proposed policies and rules to the United States for review and approval at least forty-five (45) days prior to their proposed effective date. The United States shall have thirty (30) days following receipt of these policies to communicate any objections to counsel for Defendants.  The parties shall, in good faith, attempt to resolve any disagreements over the terms of the proposed policies.  If the parties cannot agree, any party may move the Court for relief.  The provisions of the proposed policies to which there are disputes shall not be placed into effect until such time that the parties or the Court resolves the

disputes.

## IV. NOTICE OF NON-DISCRIMINATORY POLICIES

15.     Within thirty (30) days of the entry of the Consent Decree, Defendants

or their designee(s) shall distribute the Nondiscrimination Policy set forth in

**Appendix A**, the Notice to Public of this lawsuit set forth in **Appendix E**, and a

written notice that Defendants have rescinded the policies set forth in Paragraph 8,

above, as required by Paragraph 13, above, to all current tenants at the properties

Defendants own and/or manage, including Parkside East Apartments, Holt Manor

Apartments, Kelly Manor Apartments, C & H Apartments, Camelot Apartments,

Pine Cove Apartments, and Park Place Apartments.  Defendants may distribute to

current tenants new policies approved by the United States at the time of their

approval, or, in the event the United States does not approve such policies,

immediately following the resolution of any disagreement between the United

States and Defendants about the content of such policies, as provided in Paragraph

14, above.

16.     Within thirty (30) days of the entry of the Consent Decree, Defendants

or their designee(s) must prominently post in common areas of each property they

own and/or manage, the Nondiscrimination Policy set forth in **Appendix A**, and a

notice that Defendants have rescinded discriminatory housing policies as described

in Paragraph 8, above, as required by Paragraph 13, above.

17.     Within thirty (30) days of the entry of this Consent Decree, Defendants must provide written notice to and meet with all employees, agents, and anyone acting under the direction of Defendants who has responsibility for showing, renting, managing, or operating any and all dwelling units Defendants own and/or manage, to explain the changes in rental policies and practices.  This notice shall include the Nondiscrimination Policy, a copy of this Consent Decree, and a written notice that Defendants have rescinded the policies described in Paragraph 8, above, as required by Paragraph 13, above.

18.     Within ninety (90) days of the entry of this Consent Decree, Defendants or their designee(s) shall secure a signed statement from each agent and employee who has responsibility for showing, renting, managing, or operating any and all dwelling units owned and/or managed by Defendants, acknowledging that he or she has received, read, and understands the Consent Decree and the Nondiscrimination Policy.  The statement must include a certification that the employee has had an opportunity to have questions about these documents answered and agrees to abide by the relevant provisions of the Consent Decree and the Nondiscrimination Policy.  This statement shall be in the form of **Appendix B**.

19.     During the term of this Consent Decree, within thirty (30) days after each new agent or employee becomes involved in showing, renting, or managing units at the Park and at all properties owned or managed by Defendants,

Defendants shall provide a copy of this Consent Decree and the Nondiscrimination Policy to each such agent or employee and secure his or her signed acknowledgment in the form of **Appendix B**.

20.    Within thirty (30) days of the entry of this Consent Decree, Defendants or their designees shall take the following steps to notify the public of the Nondiscrimination Policy in effect at all properties owned and/or managed by Defendants:

a.  Prominently post in common areas of all rental properties that Defendants own and/or manage a fair housing sign no smaller than 10 inches by 14 inches that indicates that all units are available for rent on a nondiscriminatory basis.  A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement;

b.  Include the words "Equal Housing Opportunity" and/or the fair housing logo in all rental advertising conducted by Defendants, or their agents or employees, in newspapers, flyers, handouts, telephone directories, and other written materials; on radio, television, internet, or other media broadcasts; and on all billboards, signs, pamphlets, brochures, and other promotional literature, provided that this requirement does not compel Defendants to advertise in any of these media, but does require compliance

with this provision whenever Defendants so advertise.  The words and/or

logo shall be prominently placed and easily readable; and

    c.  Include the following phrase in the rental application(s) and the rental

agreement(s) used for rental dwelling units from the date of this Consent

Decree going forward in boldface type, using letters of equal or greater size

to those of the text in the body of the document:

> We are an equal housing opportunity provider.
> We do not discriminate on the basis of
> familial status (having children under age 18)
> race, color, sex, national origin, religion, or disability.

## V. TRAINING

21.    Within ninety (90) days of the date of entry of this Consent Decree,

Defendants and all managers, agents, and employees at properties owned and/or

managed by Defendants shall undergo in-person training on the FHA, with specific

emphasis on discrimination on the basis of familial status and retaliation for

exercising or enjoying rights protected by the FHA.  The training shall be

conducted by an independent, qualified third party identified by Defendants and

approved by the United States.  Any expenses associated with this training shall be

borne by Defendants.  Each individual who receives the training shall execute the

Certification of Completion of Training, appearing at **Appendix C**.

9

## VI. MONETARY PAYMENTS

22.     Within twenty (20) days of the entry of this Consent Decree,

Defendants shall deposit in an interest-bearing escrow account the total sum of

twenty thousand dollars ($20,000) for the purpose of compensating the aggrieved

persons whom the Court determines may have been harmed by Defendants'

discriminatory practices (hereinafter "aggrieved persons").  This money shall be

referred to as the "Settlement Fund."

23.     Any interest accruing to the fund shall become a part of the Settlement

Fund and be utilized as set forth herein.

24.     All expenses related to the establishment of the Settlement Fund shall

be borne by Defendants.

25.     Within sixty (60) days of the entry of this Consent Decree, Defendants

shall publish the Notice set forth in **Appendix E** on Craigslist and in one (1)

edition of three separate newspapers that are widely circulated within ninety (90)

miles of East Lansing, Holt and Owosso, Michigan to alert potential aggrieved

persons of discrimination, as described in Paragraph 8, above, of this lawsuit.

These newspapers shall be approved by the United States prior to publication of

the Notice.  The Notice shall be no smaller than 3 columns by 6 inches and shall be

published on one occasion in the news section.  The publication dates shall all be

Sunday.  All of the costs associated with this Notice, its publication, and distribution shall be borne by Defendants.

26.     Nothing in this Consent Decree shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons (such as conducting door-to-door interviews of current residents).

27.     Within one hundred eighty (180) days of entry of this Consent Decree, the United States shall make a preliminary determination as to persons who are aggrieved and an appropriate amount of damages that should be paid to each such person.  Defendants shall permit the United States, upon reasonable notice, to review and copy any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.  The United States will inform Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim. With respect to any identified aggrieved persons, Defendants shall have fourteen (14) days to review the declarations and provide to the United States any documents or information that they believe may refute the claims.

28.     After completion of the process described in this Section, the parties shall submit their joint final recommendations to the Court for approval if they agree, or separate recommendations if they do not agree.  When the Court issues an order providing for the distribution of funds to aggrieved persons, Defendants

shall, within ten (10) days of the Court's order, deliver to the United States checks payable to the aggrieved persons in the amount approved by the Court provided the aggrieved person has executed a release in the form of **Appendix D.** In no event shall the aggregate of all such checks exceed the amount of the Settlement Fund, including any accrued interest.

29.     In the event that less than the total amount in the Settlement Fund, including accrued interest, is distributed to persons deemed aggrieved by the United States, the Court shall order the remainder of the Settlement Fund ("remainder") to be distributed to a qualified organization(s) for the purpose of conducting fair housing enforcement or educational activities in the State of Michigan. Before selecting the qualified organization(s), Defendants will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the approval of the United States. The United States and Defendants may request modification of the proposal before approving the organization(s). The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s). The qualified organization(s) receiving the funds shall, within twelve (12) months of receipt of the funds, submit to the United States and to Defendants a report detailing how the funds were utilized. If the funds are not utilized within the first year, the qualified

organization(s) shall submit to the United States and to Defendants reports every twelve (12) months detailing how the balance of the funds were utilized every year thereafter until the funds are exhausted. The funds must be utilized by the organization(s) during the term of this Consent Decree.

## VII. REPORTING AND RECORD-KEEPING

30.     Defendants shall, no later than thirty (30) days after occurrence, provide to the United States notification and documentation of the following events:[2]

a.   Implementation of the specific injunctive relief required by this Consent Decree, including distribution of the Nondiscrimination Policy as required by Paragraph 15, above;

b.   Implementation and distribution of the notice rescinding discriminatory rental policies and documents, as required by Paragraph 15;

c.   Implementation and distribution of any new rental policies, as permitted by Paragraph 14, above;

d.   Publication of the Notice, **Appendix E**, for identification of aggrieved persons, required by Paragraph 25, above.

---

[2] Defendants will send all reports described in Section VII and all checks described in Section VI by regular mail to:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, DJ 175-37-372, United States Department of Justice, 950 Pennsylvania Avenue -- NW Building, Washington, D.C. 20530.

e.  Implementation and distribution by Defendants of the notice of this

Consent Decree to the managers and residents of any property it managed

since January 1, 1995, described in Paragraphs 18 and 19, above;

f.  Implementation by Defendants of notice requirements set forth in

Paragraph 20, above, and the training required in Paragraph 21, above;

g.  All written or oral complaints against any Defendant, or any of

Defendants' agents or employees, regarding discrimination in housing.  If

the complaint(s) is/are in writing, Defendants shall provide a copy(ies) of it

or them with the notification.  Defendants shall provide the full details of the

complaint(s), including the complainant's name, address, and telephone

number.  Defendants shall also promptly provide the United States all

information it may request concerning any such complaint(s) and shall

inform the United States within fifteen (15) days of the substance of any

resolution of such complaint(s).

31.    Defendants shall, no later than fourteen (14) days after each

publication date of the Notice, **Appendix E**, provide to the United States a copy of

each newspaper containing the Notice, as described in Paragraph 25, above.

32.    Within ninety (90) days of entry of this Consent Decree, and every six

(6) months thereafter for the duration of this Consent Decree, Defendants shall

deliver to counsel for the United States a report containing information about their

compliance efforts during the preceding reporting period, including but not limited to:

    a.  Copies of **Appendices B** and **C** executed pursuant to Paragraphs 19, 20 and 22;

    b.  Photographs of each property showing the fair housing signs and enforcement procedures posted, as required by this Decree;

    c.  All rental advertisements published pursuant to Paragraph 21(b); and

33.    The final report required by Paragraph 35, above, shall be submitted to the United States no later than thirty (30) days before the expiration of this Consent Decree.

34.    During the period in which this Consent Decree is in effect, Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to their obligations under this Consent Decree.  Upon reasonable notice to counsel for Defendants, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, Defendants shall provide copies of such documents.

## VIII. CIVIL PENALTY

35.    Within thirty (30) days after the entry of this Consent Decree, Defendants shall make a payment of  five thousand dollars ($5,000) to the United

States pursuant to 42 U.S.C. § 3614(d)(1)(C). This payment shall be in the form of an electronic funds transfer pursuant to written instructions to be provided by the United States. The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss. No Defendant shall seek to discharge any part of this debt in bankruptcy.

## IX. ACQUISITION OR TRANSFER OF INTEREST IN DWELLINGS

36.     If at any time during the term of the Consent Decree, Defendants acquire a direct or indirect ownership, management, or other financial interest in any other rental property or dwelling unit, such property or units shall be subject to the requirements of the Decree. Defendants shall notify counsel for the United States within thirty (30) days of acquiring said interest.

37.     If at any time while this Consent Decree remains in effect, Defendants decide to sell or otherwise transfer the entirety or a portion of their interest in Parkside East, Holt Manor, Kelly Manor, C & H Apartments, Camelot Apartments, Pine Cover Apartments or Park Place Apartments, or if Defendants decide to sell or otherwise transfer their interest in the management of properties or a portion thereof to a bona-fide third party purchaser in an arm's length transaction, Defendants shall take the following steps:

a.  At least thirty (30) days prior to completion of the sale or transfer, provide the United States written notice of a Defendant's intent to sell or otherwise transfer interest in the property or management services thereof, including the prospective transferee's name, address, and telephone number;

b.  Within thirty (30) days following completion of the sale or other transfer, the Defendant shall provide the United States a copy of the documents memorializing the transfer in interest of the property;

c.  If Defendants comply with Paragraph 40(a-b), and transfer all ownership, management, or other financial interest to one or more properties covered by this Decree to an arms-length purchaser or other transferee, Defendants shall thereafter be relieved of obligations under this Consent Decree with respect to the those dwelling units or property in which all interest was so transferred.  Defendants remain bound by Sections II (General Injunction), VII (Monetary Payment), and VIII (Civil Penalty).

d.  For purposes of this Decree, "arms-length transaction" is defined as a transaction that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.  If the proposed transfer of interest is not an arms-length transaction, Defendants shall remain jointly

17

and severally liable, along with the purchaser or other transferee, for the obligations or violations of this Decree for its duration.

## X. SCOPE, DURATION AND COMPLIANCE WITH CONSENT DECREE

38.     The provisions of this Decree shall apply to all Defendants, their officers, agents, employees, successors, and assigns, and to all persons acting in active concern or participation with them.  The provisions of the Decree apply to Parkside East, Holt Manor, and Kelly Manor, including Parkside East Apartments, Holt Manor Apartments, Kelly Manor Apartments, C & H Apartments, Pine Cove Apartments, Camelot Apartments and Park Place Apartments; all properties managed by Defendants; and all properties in which Defendants subsequently acquire a direct or indirect ownership, management, or other financial interest.

39.     By agreeing to entry of this Consent Decree, the United States and Defendants agree that in the event any Defendant engages in any future violation(s) of the FHA, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii).  This provision applies to any future violation, whether resolved voluntarily or through judicial proceedings.

40.     The Court shall retain jurisdiction for the duration of this Consent Decree to enforce its terms, after which time the case shall be dismissed with prejudice.  This Consent Decree shall be in effect for a period of three (3) years from the date of its entry.  The United States may move the Court to extend the

duration of the Consent Decree in the event of noncompliance, whether intentional or not, with any of its terms, or if it believes the interests of justice so require.

41.     The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution.  However, in the event the United States contends that there has been a failure by a Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

42.     Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the parties.  The other provisions of this Consent Decree may be modified by written agreement of the parties or by motion to the Court.  If the modification is by written agreement of the parties, then such modification will be effective upon filing of the written agreement with the Court, and shall remain in effect for the duration of the Consent Decree or until such time as the Court indicates through written order that it has not approved the

modification.

## XI. EFFECT ON LITIGATION HOLDS

43.     The parties agree that, as of the date of entry of this Consent Decree,

litigation is not reasonably foreseeable concerning the matters described herein.

To the extent that any party previously implemented a litigation hold to preserve

documents, electronically stored information, or things related to the matters

described in this Consent Decree, the party is no longer required to maintain such a

litigation hold.

44.     The preceding Paragraph does not relieve Defendants of any record

keeping responsibilities imposed by the terms of this Consent Decree.

## XII. COSTS OF LITIGATION

45.     Each party to this litigation will bear its own costs and attorneys' fees

associated with this litigation.


IT IS SO ORDERED, this _____ day of _____ 2016.


                                        _____
                                        Sean F. Cox
                                        United States District Judge

*For the United States:*

BARBARA L. McQUADE
United States Attorney
Eastern District of Michigan

VANITA GUPTA
Principal Deputy Assistant
Attorney General
Civil Rights Division

*/s/ Sarah Karpinen*
SARAH KARPINEN, P63289
Assistant United States Attorney
211 W. Fort Street
Suite 2001
Detroit, Michigan 48226
(313) 226-9595
Sarah.Karpinen@usdoj.gov

*/s/ Nancy F. Langworthy*
SAMEENA SHINA MAJEED
Chief
TIMOTHY J. MORAN
Deputy Chief
NANCY F. LANGWORTHY
Trial Attorney
Housing and Civil Enforcement
 Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C. 20530
(202) 616-8925
Nancy.Langworthy@usdoj.gov

PATRICK A. MILES, JR.
United States Attorney
*/s/ Francesca Ferguson*
W. FRANCESCA FERGUSON, P30440
Assistant United States Attorney
Post Office Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404, ext. 12020
Francesca.Ferguson@usdoj.gov

*For Defendants:*

*/s/ Joseph Falcone* (with consent)
JOSEPH FALCONE, ESQ.
3000 Town Center, Suite 2370
Southfield, MI 48075
(248) 357-6613
jf@lawyer.com

Dated: August 30, 2016

## APPENDIX A

### Nondiscrimination Policy

It is the policy of Parkside East Apartments, Holt Manor Apartments, Kelly Manor Apartments, C & H Apartments, Camelot Apartments, Pine Cove Apartments, and Park Place Apartments to comply with Title VIII of the Civil Rights Act of 1968, as amended, commonly known as the Fair Housing Act, by ensuring that apartments are available to all persons without regard to race, color, religion, national origin, disability, familial status (having children under age 18), or sex. This policy means that, among other things, the owners of this property and all their agents and employees with the responsibility for renting, managing, or administering any apartments must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants. Specifically, they may not:

A.     Refuse to rent, refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, national origin, disability, familial status, or sex;

B.     Discriminate against any person in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, national origin, disability, familial status, or sex;

C.     Make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, national origin, disability, familial status, or sex;

D.     Represent to persons because of race, color, religion, national origin, disability, familial status, or sex that any dwelling is not available for inspection or rental when such dwelling is in fact so available; or

E.     Coerce intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his/her having exercised or enjoyed, or on account of his/her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act.

Any agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action. Any action taken by an agent or employee that results in unequal service to, treatment of, or behavior toward tenants or actual or potential applicants on the basis of race, color, religion, national origin, disability, familial status, or sex may constitute a violation of state and federal fair housing laws.

Any tenant or applicant who believes that any of the above policies have been violated by any owner, agent, or employee may contact the U.S. Department of Housing and Urban Development at 1-888-799-2085, or the U.S. Department of Justice at 1-800-896-7743 or 202-514-4713.

**APPENDIX B**

**Acknowledgment of Receipt of Consent Decree and Nondiscrimination Policy**

I have received a copy of the Consent Decree entered in *United States v. Parkside East, Inc., et al.,* including a copy of the Nondiscrimination Policy.  I have read and understand these documents and have had my questions about these documents answered. I understand my legal responsibilities and shall comply with those responsibilities.


_____
Signature

_____
Print Name

_____
Job Title/Position

_____
Date

**APPENDIX C**

**Certification of Completion of Training**

On _____, I completed an in-person training on the requirements of the federal Fair Housing Act, 42 U.S.C. §§ 3601-3631, as well as state and local fair housing laws, including the prohibition against discrimination based on familial status, in compliance with the Consent Decree entered by the United States District Court for the Eastern District of Michigan in *United States v. Parkside East, Inc., et al.*


_____
Signature


_____
Print name


_____
Job Title/Position


_____
Date

24

**APPENDIX D**

**Full and Final Release of Claims**

In consideration for the parties' agreement to the terms of the Consent Decree entered in *United States v. Parkside East, Inc., et al*, as approved by the United States District Court for the Eastern District of Michigan, and in consideration for the payment of $_____, I, _____ [**print name**], do hereby fully release and forever discharge Parkside East, Inc., Holt Manor, Inc., Kelly Manor, Inc., and Sudi Hopper  (hereinafter "the Defendants"), along with their insurers, co-insurers, reinsurers, attorneys, related companies, principals, predecessors, successors, assigns, affiliates, partners, directors, officers, agents, employers, shareholders, subsidiaries, employees, former employees, independent contractors, heirs, executors, and administrators and any persons acting under the Defendants' respective direction or control from any and all fair housing claims set forth or related to the facts at issue in the litigation referenced above, or in any way related to that litigation, and any other claims arising from alleged housing discrimination that I may have had against any of them for any of the Defendants' actions or statements related to those claims through the date of this Release.

I acknowledge and understand that, by signing this Release, I am waiving any right to pursue my own legal action against Defendants Parkside East, Inc., Holt Manor, Inc., Kelly Manor, Inc., and Sudi Hopper based on the discrimination alleged by the United States in this case.

I also acknowledge that I have been informed that I may review the terms of this Release with an attorney of my choosing, and to the extent that I have not obtained legal advice, I voluntarily and knowingly waive my right to do so.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of _____, 2016.

_____
Signature

_____
Print Name

25

**APPENDIX E**

**NOTICE TO PUBLIC**

On _____, 2016, the United States District Court for the Eastern District of Michigan entered a Consent Decree resolving litigation brought by the United States Department of Justice involving Defendants Parkside East, Inc., Holt Manor, Inc., Kelly Manor, Inc., and Sudi Hopper relating to Parkside East Apartments in East Lansing, Michigan, Holt Manor Apartments in Holt, Kelly Manor Apartments in Owosso, and other properties managed by the Defendants.  The litigation alleged that the Defendants discriminated against residents of these properties on the basis of familial status by refusing to rent one-bedroom units to families with children under the age of 18, maintaining a policy prohibiting families with children from residing in one-bedroom units, and informing prospective renters of this policy.  The Parties have agreed to this Consent Decree to avoid costly and protracted litigation.

Under this Consent Decree, you or an estate may be entitled to receive monetary relief if you or a family member:

- Applied to rent a unit and were rejected by Parkside East Apartments, Holt Manor Apartments, Kelly Manor Apartments, C & H Apartments, Camelot Apartments, Pine Cove Apartments, Park Place Apartments, or_____, or Sudi Hopper because you had children under the age of 18;

- Took into your home family members who had applied to rent a unit and were rejected by Parkside East Apartments, Holt Manor Apartments, Kelly Manor Apartments, C & H Apartments, Camelot Apartments, Pine Cove Apartments, Park Place Apartments, or_____, or Sudi Hopper because of familial status discrimination; or

- Received a lease violation, notice of lease non-renewal, or notice of eviction related to the fact that you had children under the age of 18 in your household while living at Parkside East Apartments, Holt Manor Apartments, Kelly Manor Apartments, C & H Apartments, Camelot Apartments, Pine Cove Apartments, Park Place Apartments or _____.

If you believe that you or a family member has been discriminated against in any way described above, please contact the United States Department of Justice at:  1-800-896-7743 [after dialing the number, press 93], or write or send an e-mail to:

United States Department of Justice<br>
Attn: DJ# 175-37-372<br>
Civil Rights Division<br>
Housing and Civil Enforcement Section<br>
950 Pennsylvania Ave., NW – G Street<br>
Washington, DC 20530<br>
E-mail address:  fairhousing@usdoj.gov

**TO BE INCLUDED IN THIS SETTLEMENT YOU MUST CALL OR WRITE BY _____ , 2016, AND YOUR MESSAGE OR LETTER MUST INCLUDE YOUR NAME, ADDRESS AND AT LEAST ONE TELEPHONE NUMBER WHERE WE CAN REACH YOU.**